## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MARK JONES,<br>2. JEFFERY SMITH<br><br>        Plaintiffs,<br><br>v.<br><br>1. WATCO COMPANIES , L.L.C.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: 13-CV-372-CVE-TLW |

### AMENDED COMPLAINT

On May 17, 2013, the plaintiff Mark Jones filed a *Petition* naming the defendant in the District Court of Tulsa County in the State of Oklahoma.  The defendant removed the suit on June 24, 2013, but have not yet file a responsive pleading.  The plaintiffs, for this *Amended Complaint* against Watco Companies, L.L.C., state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. At all times relevant hereto, each of the plaintiffs has resided in Tulsa County in the State of Oklahoma.

2. Mr. Jones was an employee of the defendant from approximately July of 2003 until approximately October of 2011, when the defendant terminated Mr. Jones's employment.

3. Mr. Smith was an employee of the defendant from approximately April of 2003 until approximately March of 2012, when the defendant terminated Mr. Smith's employment.

4. At all times relevant hereto, the defendant was a foreign entitiy doing business in Oklahoma.  At the time Mr. Jones was hired, the defendant was a foreign for profit corporation incorporated in the State of Kansas.  In December of 2010 it appears that the defendant converted to a Limited Liability Company.

5. Mr. Jones and Mr. Smith worked for the defendant's railroad operations in multiple venues, priamrily within the Northern District.

6. At all times mentioned herein, the defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e(b) and as the term is defined by the Equal Employment Opportunity Commission ("EEOC").

7. This action arises under the Title 42 U.S.C. §§ 1981, 1981a, 1988, and 2000e.

8. This Court has original jurisdiction over the federal claims, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state claims, 28 U.S.C. § 1367, as stated herein.

9. The United States District Court for the Northern District of Oklahoma is the proper venue for this action pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) because this is the District in which each of the plaintiffs reside, where the defendant does business and in which a substantial part of the events or omissions giving rise to the claims occurred.

10. Although this *Amended Complaint* is divided into sections, it is intended to be read as a whole, with each part incorporating all others.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

11. Mr. Jones, a black man, was a loyal, dedicated employee of the defendant up to the day he was fired. He had been recognized for high performance and was promoted in March 2011 to site manager at the Holly refinery location in Tulsa, Oklahoma

12. In May of 2011, Mr. Jones was demoted to conductor and transferred to the Stroud, Oklahoma location without explanation. Mr. Jones was told by a departing member of management that race was an issue with his position and that another manager had said that she did not want "niggers in charge."

13. Mr. Jones had witnessed and reported a number of safety violations before being promoted to management, while a manager and following his term in management.

14. On or about October 28, 2011, Mr. Jones was fired for wearing shorts while in a company vehicle. Mr. Jones had not, however, committed this infraction, instead having voluntarily driven a co-worker to the job site in his personal vehicle while not on duty.

15. Mr. Jones told management of the shorts misunderstanding, as did the employee who benefited from the ride to work, but management did not reverse the decision or allow Mr. Jones any opportunity to further dispute the matter.

16. Mr. Jones had witnessed non-black employees violate company policy and even make serious safety errors that were known to management without being fired.

17. Shortly after his termination, Mr. Jones learned that Mr. Jones's former manager had said "one nigger down, one to go." There was only one other black employee similarly situated to Mr. Jones at that time and he was fired soon thereafter.

18. The other black Watco employee in the area was Jeffery Smith. When he was hired on or about April 1, 2003, Mr. Smith started as a track laborer. Mr. Smith moved to switching and was promoted to conductor/engineer. He quickly became switching manager and then site manager.

19. In January of 2011 Mr. Smith was demoted from site manager to conductor and relocated to Stroud. His pay was also reduced.

20. During his four years as site manager at Watco's Holly Refinery location in Tulsa, Oklahoma, Mr. Smith had been a loyal employee of the company and had a stellar safety record – for a time, the best companywide – as well as the highest rating possible.

21. Before his demotion and transfer, Mr. Smith was warned by his former supervisor, Jody Brown, that race was a problem at Watco and that race would affect Mr. Smith's advancement at

Watco. Mr. Smith also heard that the logistics manager, Janet Clark, had told Mr. Brown and her boss that she did not want "niggers in charge".

22. Compliance with safety regulations was not well enforced at Mr. Smith's new location and Mr. Smith complained to management about the issue.

23. Several employees committed very serious safety infractions – many that involved significant physical damage – and were either not disciplined or disciplined inappropriately under the circumstances.

24. In February of 2012, however, when two couplings were broken under another operating engineer's supervision, management tried to pin the issue on Mr. Smith. Management surprised Mr. Smith with a hearing, not giving him notice of the nature and content of the hearing and not giving him adequate time to prepare or present a defense.

25. Mr. Smith was terminated shortly after the hearing. Besides the hearing being held inappropriately, the discipline Mr. Smith received for this perceived failure was inconsistent with the discipline meted out for similar and even more serious offenses.

26. Prior to Mr. Smith's termination he was informed that his supervisor had said, "one nigger down, one to go." In relation to Mark Jones's termination, Mr. Smith believes that the comment occurred approximately shortly after Mr. Jones was fired.

## COUNT I: MENTAL AND EMOTIONAL DISTRESS

27. The defendant owed the plaintiffs a duty of care during the plaintiffs' employment period with the defendant, including the duty to avoid inflicting upon them emotional distress by the manner in which the defendant operated its business and in the manner of continuing or discontinuing the plaintiffs' employment.

28. Throughout thier employment with the defendant, the plaintiffs were confronted with the defendant's improper business practices, including the violation of statutes.

29. As a result of the defendant's breach of its duty of care to the plaintiffs, the plaintiffs suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which they should be compensated.

30. The defendant's actions were reckless, entitling the plaintiffs to punitive damages.

## COUNT II: TERMINATION IN VIOLATION OF PUBLIC POLICY

31. The defendant wrongfully terminated the plaintiffs' employment in violation of various public policies of the State of Oklahoma.

32. Among other things, the defendant discharged the plaintiffs from their employment in retaliation for their complaints of workplace safety violations.  Terminating employment for voicing concerns about workplace safety violates a clear mandate of Oklahoma public policy.

33. By the aforesaid acts and omissions of the defendant, the plaintiffs have been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, in an amount to be proved at trial.

34. As a further direct and legal result of the acts and conduct of the defendant, the plaintiffs have been caused to and did suffer and continue to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, and anxiety.

35. The defendant, by engaging in the aforementioned acts and in authorizing and ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and

acted with willful and conscious disregard of the rights and welfare of the plaintiffs, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

### COUNT III: BREACH OF IMPLIED CONTRACT

36. On or about July 3, 2003, the plaintiffs and the defendant entered into an implied unilateral contract whereby the defendant's personnel manual and other mandatory employment documents acted as offers for a unilateral contract accepted by the plaintiffs' actions to continue working for the defendant.

37. The defendant breached the contract by terminating the plaintiffs' employment in contravention of the implied unilateral contract the manner of operating the defendant's business and in the manner of continuing or discontinuing the plaintiffs' employment.

38. The plaintiffs have performed all conditions precedent to recover under the contract and have not excused the defendant's breach.

39. As a result of the defendant's breach of the implied unilateral contract, the plaintiffs have sustained damages including but not limited to the amount of lost earnings and employment benefits and the amount of damages for mental and emotional distress or anguish.

### COUNT IV: VIOLATION OF 42 U.S.C. § 1981

40. The defendant's actions were discriminatory as to the plaintiffs.  The defendant unfairly treated and ultimately terminated the plaintiffs, at least in part because of thier race.

41. The defendant's actions as described herein interfered with the plaintiffs' rights in the making, performance, modification, and termination of contacts, and the enjoyment of all benefits, privileges, terms, and condition of their contractual relationship.

42. As a result of defendant's actions, the plaintiffs have suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and

suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

43. The defendant has engaged in intentional discrimination and has done so with malice or reckless indifference to the federally protected rights of the plaintiffs.

### COUNT V: VIOLATION OF TITLE VII (*JONES ONLY*)

44. The defendant's actions described herein were intentional and demonstrate differing employment standards for similarly situtuated, non-minority employees and Mr. Jones, who is a member of a protected class. Such actions and standards created a hostile work environment and were adverse to Mr. Jones's employment situation and status.

45. Mr. Jones's termination was without sufficient justification and grossly disproportiant to any perceived misconduct. The defendant unfairly treated and ultimately terminated Mr. Jones, at least in part because of his race. Such adverse employment actions were in violation of the Civil Rights Act, 42 U.S.C. § 2000e-2.

46. As a result of the defendant's actions, Mr. Jones has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court award:

A. Judgment for both plaintiffs against the defendant for actual and punitive damages for the defendant's act of negligent infliction of emotional distress;

B. Judgment for both plaintiffs against the defendant for actual and punitive damages for the defendant's act of retaliatory discharge in contravention of Oklahoma's public policy;

C. Judgment for both plaintiffs against the defendant for actual and punitive damages for the defendant's breach of implied contract;

D. Judgment for both plaintiffs against the defendant for violation of the Title 42 U.S.C. §§ 1981 and 1981a;

E. Judgment for Mark Jones against the defendant for violation of Title VII;

F. Judgment for both plaintiffs against the defendant for the costs of litigation, including a reasonable attorney's fee;

G. Any and all other relief as this Court deems appropriate according to equity, justice and the evidence presented.

Respectfully submitted,

/s/ Anthony L. Allen
Anthony L. Allen     OBA# 19738
ALLEN & WISNER
101 W. Broadway
Muskogee, Oklahoma 74401
918.683.5291
918.683.3397 fax
anthony@oklahomaslawfirm.com

*Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of July, 2013, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/ Anthony L. Allen